# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILLIP LEE FANTONE, | ) |
|     Plaintiff, | ) Civil Action No. 2: 12-cv-1691 |
| v. | ) Cynthia Reed Eddy, |
| | ) United States Magistrate Judge |
| FRED LATINI, JOE BURGER, and | ) |
| RON MACKEY, | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Presently pending is the Motion to Dismiss, with brief in support filed by Defendants (ECF Nos. 33 and 35), the Response and Brief in Opposition filed by Plaintiff (ECF Nos. 40 and 41), the Reply Brief filed by Defendants (ECF No. 44), and the Sur-Reply[1] filed by Plaintiff (ECF No. 46). After careful review of the filings and the entire record, the Motion will be granted in its entirety.

### FACTUAL BACKGROUND

As the law requires, at this stage of the proceeding all disputed facts and inferences are to be resolved in favor of Plaintiff, the non-moving party.

Plaintiff, a technical parole violator, has been incarcerated since August 12, 2010. His maximum incarceration date is August 17, 2014.

In March 2012, Plaintiff appeared before the Parole Board to be evaluated for parole release. Complaint at ¶ 32. Thereafter, on March 22, 2012, "security officers led by CO Burger rushed into plaintiff's cell CA3028 and handcuff Plaintiff whom is escorted to the Restrictive Housing Unit ("RHU")" and placed under investigation for allegedly giving his prescription

---

[1] By Text Order of July 25, 2013, the Court informed the parties that Plaintiff's Motion to Strike (ECF No. 46) would be deemed a Sur-Reply.

1

pain medicine (methadone) to other inmates. *Id*. at ¶¶ 33, 36. On April 12, 2012, Defendant Burger interrogated Plaintiff and stated that he had statements from two nurses and that Plaintiff was on camera "cupping methadone in his hand, not taking it and leaving the medication dispensing line." *Id*. at ¶ 41. According to the Complaint, Defendant Burger wanted a written confession, and when Plaintiff denied the allegations and refused to write a confession, Defendant Burger became angry and threatened to "bury [Plaintiff] in this hole and you'll never see population here and then I'll have you shipped so far away you'll never get a visit." *Id.* at ¶ 44.

Approximately a week later, on or about April 18, 2012, Plaintiff received papers from the parole board granting parole. On the same day, he also received Misconduct Report #B310909, which states that two confidential security informants ("CSIs") wrote statements that on two separate occasions Plaintiff had given them methadone. *Id*. at ¶ 48. The misconduct report makes no mention of statements from nurses or that Plaintiff was seen on camera cupping the methadone in his hand.

On April 23, 2012, Plaintiff filed grievance 409468 against Defendant Burger regarding the "verbal threat" made during the interrogation. In his grievance, Plaintiff stated that "he was in fear of being violated by CO Burger." *Id*. at ¶ 88.

On April 25, 2012, Plaintiff appeared before Defendant Hearing Examiner Ron Mackey via video conferencing for his misconduct hearing. Prior to entering the room, Plaintiff saw Defendants Latini and Burger enter the hearing room and close the door. After they exited, Plaintiff entered the hearing room, Defendant Mackey read him the charges and told Plaintiff that Defendant Latini had verified that the two CSI's were credible and that their statements collaborated the evidence. Plaintiff's requests to examine the statements was denied, as was his

request for a continuance so that he could obtain statements from nurses who would back his position. Defendant Mackey found Plaintiff guilty and sanctioned him to time served (35 days) in the RHU. Thereafter, Plaintiff filed an administrative appeal of the decision of the hearing examiner.

Plaintiff, however, was not released from the RHU, but rather "per Lt Latini" was "placed under Administrative Custody (AC) . . . DC-ADM Section A.1.c. Inmate is a danger to himself / herself or others." *Id.* at ¶ 79. Plaintiff remained in AC until May 8, 2012, when he was released back into prison general population. *Id*. at ¶ 84.

On May 11, 2012, Plaintiff was asked by Lt Rohrbacher of the RHU to write a statement that he was not in fear of Defendant Burger, contrary to what his grievance stated. Plaintiff conceded and wrote the statement. The next day, on May 12, 2012, as he was returning from chow hall, Plaintiff was again handcuffed and placed on AC status under investigation. As Plaintiff was being escorted to the RHU, "CO Burger walks out of the RHU with flexing biceps with a slow robot type gait." *Id*. at ¶ 92.

Plaintiff thereafter received Misconduct Report #B310923 for (1) threatening an employee or family with bodily harm, (2) threatening another person; and (3) destroying, altering, or tampering with or damaging property.[2] During the hearing on this misconduct, Defendant Mackey called Corrections Officer Durkacs, the reporting officer, as a witness. The hearing examiner told Plaintiff that he was allowing CO Durkacs to rewrite the misconduct report and the hearing was continued until June 12, 2012. On June 7, 2012, Plaintiff received the rewritten (and renumbered) Misconduct Report, #B148406.

---

[2] Misconduct Report #B148406 states that Plaintiff wrote threatening statements on his bunk while in the RHU aimed towards Defendant Burger, as well as racially motivated threats toward black correction officers at SCI Pittsburgh.

3

At the reconvened misconduct hearing, Defendant Latini appeared as a witness and reported that he had a DVD of the handwriting with a comparison sample. However, the computer needed to view the DVD on was not working and therefore the DVD was not played. Without seeing the evidence, Defendant Mackey found Plaintiff guilty of the misconduct and sanctioned Plaintiff to ninety (90) days disciplinary custody ("DC"). Thereafter, Plaintiff filed an administrative appeal of the decision of the hearing examiner.

On or about June 15, 2012, Plaintiff was informed that that his parole had been rescinded. Around the same time, Plaintiff was notified by Superintendent Daniel P. Burns that based upon his review of Misconduct Report #B310909 (the misconduct regarding the methadone), the misconduct was expunged as the CSIs were not registered in accordance with Department of Corrections procedures. Complaint, Exhibit B (ECF No. 3-2).

By letter dated September 25, 2012, Plaintiff was informed that based upon the recommendation of the Office of the Chief Hearing Examiner, Misconduct Report #B148406 (the graffiti misconduct report) was "remanded to the institutional level to be reheard by the Hearing Examiner." Amended Complaint, Exhibit B-6 (ECF No. 30-3).

On November 1, 2012, Plaintiff was transferred to SCI - Coal Township. ECF No. 8. After this lawsuit was filed, Plaintiff was informed that "[a] hearing was conducted on 12-21-12 dismissing all of the charges [with regard to Misconduct Report #B148406]. A copy of the Disciplinary Hearing Report is enclosed, and the misconduct system in the computer will be updated to reflect the dismissed misconduct." *Id*., Exhibit B-8A.

PROCEDURAL BACKGROUND

Plaintiff initiated this lawsuit on November 19, 2012, against various individuals and/or agents employed with the Pennsylvania Department of Corrections ("DOC"). Named as

Defendants were Fred Latini, Joe Burger, Ron Mackey and Daniel Burns (collectively referred to as the "Commonwealth Defendants"), and Rochelle Rosen, M.D., and Phillip Balk, M.D. (collectively referred to as the "Medical Defendants"). The eight-count Complaint included five (5) counts against the Commonwealth Defendants for alleged 14th Amendment due process violations under 42 U.S.C. § 1983 (Counts One, Three and Five), conspiracy under 42 U.S.C. § 1985 (Count Two), and retaliation under 42 U.S.C. § 1983 (Count Four) and three (3) counts against the Medical Defendants for alleged 14th Amendment due process violations under 42 U.S.C. § 1983 (Count Six), and Eighth Amendment cruel and unusual punishment (Counts Seven and Eight).

On January 25, 2013, the Medical Defendants filed a Motion to Dismiss (ECF No. 21) and on January 29, 2013, the Commonwealth Defendants filed their own Motion to Dismiss (ECF No. 24). In response, Plaintiff filed an Amended Complaint (ECF No. 30), and withdrew his claim against Defendant Burns (Count Five) and all claims against the Medical Defendants (Counts Six, Seven and Eight) (ECF No. 31). In essence, the Amended Complaint contends that Plaintiff's "parole was a protected liberty interest as recognized by the US Supreme Court however it was in fact rescinded due to the malicious acts of the defendants and . . . due to this (sic) slanderous acts of Lt Latini and CO Burger." Amended Complaint, at ¶ 26 (ECF No. 30).[3]

The Commonwealth Defendants filed the instant Motion to Dismiss, with brief in support (ECF Nos. 34 and 35), in which they move to dismiss Plaintiff's claims in their entirety on three

---

[3] The Court considers the Amended Complaint a "supplement" as well as an "amendment" as it includes allegations about conduct taking place after the original complaint was filed - specifically, Paragraphs 21 - 24, inclusive. *See* Fed.R.Civ.P. 15(d); *See Boone v. Nose*, No. 13-1935, 2013 WL 3481808 at n. 1 (3d Cir., July 11, 2013). In the Amended Complaint, Plaintiff also notes that subsequent to the date of filing the Complaint, he was found guilty of misconduct B150681, "again their (sic) was no evidence by which to make a guilty determination, . . . but

5

grounds: (i) Plaintiff's due process rights were not triggered; (ii) Plaintiff's conspiracy claim is not based on class based discrimination and a person cannot conspire with himself; and (iii) failure to state a claim of retaliation. The matter is fully briefed and is ripe for disposition. Defendants arguments will be addressed seriatim.

## STANDARD OF REVIEW

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom, in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*,

---

did not bring this as part of his civil action due to the date the original complaint was drafted."

556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim'." *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

A court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In a section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since

---

Amended Complaint, at 6.

this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378, (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 2102 (10th Cir. 1996).

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

In addition, in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Specifically, Congress enacted the provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

In addition, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed in forma pauperis ("IFP"), i.e., without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any

action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Further, the PLRA substantially amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e. In this regard, the PLRA amended section 1997(c) to require the court "on its own motion or on the motion of a party" to dismiss any action brought by a prisoner with respect to prison conditions under 42 U.S.C. § 1983 if the action is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." See 42 U.S.C. § 1997e(c)(1).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28 U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 2). In addition, his claims concern prison conditions. Thus, Plaintiff's allegations must be reviewed in accordance with the directives of the PLRA.

## DISCUSSION

A. *Due Process Claims* (Counts One and Three)

Plaintiff claims that Defendants Latini and Mackey denied him fair misconduct hearings, thereby violating his procedural due process rights. Further, Plaintiff argues that his "parole which is a liberty interest was taken from him due to the actions of the defendants." Pl's Br. in Opp'n at 9.

Specifically, Count One of the Complaint alleges that Defendant Latini violated Plaintiff's Fourteenth Amendment right to due process by (i) falsifying the evidence during the misconduct hearing held on April 25, 2012; and (ii) concealing evidence (the DVD) during the misconduct hearing held on June 12, 2012.

9

Count Three of the Complaint alleges that Defendant Mackey violated Plaintiff's Fourteenth Amendment right to due process by denying Plaintiff a fair hearing when he (i) interviewed adverse witnesses in private before the misconduct hearing held on April 25, 2012, and by not granting a continuance so that Plaintiff could obtain favorable statements; (ii) interviewed an adverse witness in private before the misconduct hearing held on June 5, 2012 and allowed CO Durkacs to rewrite the misconduct report; and (iii) found Plaintiff guilty of misconduct even though Defendant Mackey was not able to view the evidence (i.e., the DVD).

Plaintiff's contention that his due process rights were violated in the context of his misconduct hearings requires a determination of whether he had a protected liberty interest and, if so, what process was mandated to protect it. *See Sandin v. Conner*, 515 U.S. 471, 484 (1995); *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Importantly, due process requirements apply only when the prison's actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483. "[T]he baseline for determining what is "atypical and significant" - the "ordinary incidents of prison life" - is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law. *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 486).

Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Sandin*, 515 U.S. at 486; *see Griffin*, 112 F.3d at 706-07 (finding that fifteen month period of administrative custody did not deprive prisoner of a liberty interest). Here, Plaintiff was sanctioned to time served, or thirty-five (35) days, in the RHU for Misconduct #B310909 and ninety (90) days disciplinary conduct for Misconduct #B148406. Accordingly, none of the

punishment Plaintiff received rises to the level of being an atypical or significant hardship under *Sandin*.[4]

In the case at bar, however, Plaintiff argues that his due process rights were triggered under *Sandin* because (i) he has a "liberty interest since the actions of the defendants caused Plaintiff's parole to be rescinded." Pl's Br. at 16. Thus, the threshold question presented by Plaintiff's due process claims is whether Defendants' actions impacted a constitutionally protected liberty interest.

"To the extent that a loss of parole resulted from the [misconduct], a 'protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state.'" *Boone v. Nose*, No. 13-1935, 2013 WL 3481808 at * 1 (3d Cir., July 11, 2013) (quoting *Asquith v. Dep't of Corr.,* 186 F.3d 407, 409 (3d Cir. 1999)). The United States Constitution does not itself establish a liberty interest in parole. *Id.* (citing *Newman v. Beard*, 617 F.3d 775, 783 (3d Cir. 2010)). Like the plaintiff in *Boone*, while Plaintiff had been granted parole, he had not yet been released at the time of the misconduct hearing. "And in Pennsylvania, 'a prisoner does not have a protected liberty interest, or due process rights, in parole until the inmate is actually released on parole.'" *Id.* (quoting *Nieves v. Pa. Bd. of Prob. & Parole*, 995 A.2d 412, 418 (Pa. Commw. Ct. 2010), *aff'd*, 613 Pa. 366 (Pa 2011) (per curiam). *See also Rogers v. Pa. Bd. of Prob. & Parole*, 724 A.2d 319, 325 (Pa. 1999) ("Our courts have consistently found that the Parole Act does not create a liberty interest in parole . . . . Rather, parole is a matter of grace and

---

[4] Further, the Court notes that the record clearly reflects that Plaintiff received whatever process was due as he was exonerated on appeal on Misconduct #B310909, and on appeal, the charges on Misconduct #B148406 were dismissed. While Plaintiff complains that he was not allowed witness statements and the DVD was not introduced as evidence at his hearings, nothing shows that the addition of such evidence necessarily would have guaranteed his exoneration at the hearings.

11

mercy shown to a prisoner who has demonstrated to the Board's satisfaction, his ability to function as a law abiding citizen.").

Thus, because Plaintiff had yet been released on parole at the time of his misconduct hearings, he does not have a protected liberty interest, or due process rights, in parole. In light of these facts, the Amended Complaint does not make any showing of a procedural due process violation with respect to Defendants' alleged misconduct.

B.  *Conspiracy Claims* (Count Two)

Plaintiff brings his conspiracy claims under 42 U.S.C. § 1985(3).[5] Section 1985(3) prohibits conspiracies to deprive a "person or any class of persons equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). In a line of cases beginning with *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the United States Supreme Court has made clear that to state a claim under § 1985(3) the following must be alleged: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983) (citing *Griffin*, 403 U.S. at 102-03).

The Court finds that the allegations in the Amended Complaint that Defendants Latini and Burger conspired to have Plaintiff convicted of Misconduct Report #B310909 fail to state a claim under § 1985(3) because the allegations fail to allege discrimination against a " 'specific,

---

[5] Section (1) of 1985 is not applicable as that section applies to conspiracies which prevent an officer from performing duties; and Section (2) is not applicable as that section applies to conspiracies which deter any party or witness in a court proceeding.

identifiable class of persons.'" *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 5 (1st Cir. 1996)). The Amended Complaint simply states that Plaintiff was the victim of a conspiracy without showing or pleading that such discrimination was based on race or some other class-based discrimination. This conclusory allegation is insufficient to establish a § 1985(3) conspiracy claim.

Further, a conspiracy requires a "combination of two or more persons acting with a common purpose to do an unlawful act . . . ." *General Refractories v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003). The Complaint alleges that Latini "did consciously and single handedly conspire to have Plaintiff convicted of misconduct B148408 . . . ." Complaint, at ¶ 226. A conspiracy cannot be comprised of only one person.

For these reasons, the Court finds that Plaintiff has failed to state a § 1985(3) conspiracy claim.

Even interpreting Plaintiff's claims with the indulgence required by *Haines v. Kerner*, and assuming *arguendo* that Plaintiff's conspiracy claims were brought under 42 U.S.C. § 1983, the Court concludes such claim still fails. To state a conspiracy claim under § 1983, plaintiff must show that "persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 254 (3d Cir. 1999). "As a threshold matter, however, a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Township of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) (citing *Andree v. Ashland Cnty.*, 818 F.2d 1306, 1311 (7th Cir.1987)) and *Dixon v. City of Lawton,* 898 F.2d 1443, 1449 (10th Cir.1990) (recognizing that deprivation of a right was a necessary predicate to § 1983 conspiracy liability)). As discussed *supra*, at the time of his

misconduct hearings, Plaintiff had no protected liberty interest, or due process rights, in parole. Therefore, the Court finds that Plaintiff has also failed to state a § 1983 conspiracy claim.

C.   *Retaliation Claims* (Count IV)

"Retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution . . . " *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements, *to wit*: that (1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

Plaintiff raises a three-part retaliation claim, which is centered solely around the alleged actions of Defendant Burger (Count Four): (i) during an interrogation on April 12, 2012, Defendant Burger threatened to "bury" Plaintiff in the RHU and said that he would have Plaintiff shipped far away if Plaintiff did not provide a written confession; (ii) Defendant Burger retaliated against Plaintiff for filing a grievance by placing him in administrative custody; and (iii) Defendant Burger "flexed his biceps with a slow robot type gait." Complaint, at ¶ 92.

As to Burger's verbal threats made during the interrogation, these statements were allegedly made <u>before</u> Plaintiff had filed his grievance or engaged in any other type of constitutionally protected activity.[6] Therefore, this allegation fails to state a claim and must be dismissed.

---

[6] Plaintiff filed Grievance 409468 on April 23, 2012, almost two weeks after the interrogation.

Next, as to Plaintiff's claim that Defendant Burger placed him in administrative custody in retaliation for Plaintiff filing a grievance, Plaintiff's Complaint clearly states that Plaintiff was placed in AC "per Lt. Latini," not Defendant Burger. *See* Complaint, ¶ 79 (emphasis added). Both the Complaint and Amended Complaint fail to state the requisite causal connection between the filing of a grievance against Defendant Burger and the Plaintiff's placement into AC by Defendant Latini. Therefore, this allegation also fails to state a claim and must be dismissed.

Finally, as to Plaintiff's third claim, that Burger taunted him by flexing his biceps, harassment and taunting, unaccompanied by physical injury or damage, are not cognizable under § 1983. *Barber v. Jones*, 2013 WL 211251 (D.N.J. Jan. 18, 2013); see also *Stepney v. Gilliard*, 2005 WL 3338370 (D.N.J. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983"); *Abuhouran v. Acker*, 2005 WL 1532496 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . . verbal harassment, . . . standing alone, do[es] not state a constitutional claim").

For all these reasons, the Court finds that Plaintiff has failed to state a retaliation claim.

D.  *Futility*

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id. But see Fletcher-Harlee*

*Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (in non-civil rights cases, a plaintiff must seek leave to amend and submit a draft of an amended complaint).

Because Plaintiff was previously informed that his original complaint was deficient, and he filed an Amended Complaint, the Court is not required to provide him with further leave to amend. *Shelley v. Patrick,* 481 F. App'x 34, 36 (3d Cir. 2012).

For all the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint will be granted.


**AND NOW**, this 8th day of August, 2013,

It is hereby **ORDERED** that Defendants' Motion to Dismiss is **GRANTED** in its entirety and Plaintiff's claims are dismissed with prejudice as a matter of law.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

By The Court:

*/s Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

cc: PHILLIP LEE FANTONE
GJ3440
SCI Coal Township
One Kelley Drive
Coal Township, PA 17866

Robert A. Willig
Office of Attorney General
Email: rwillig@attorneygeneral.gov